**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DAVID BAILEY,<br>　　　　　*Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | SA-20-CV-00466-XR |
| OSCAR RAMOS,  CITY OF SAN<br>ANTONIO, A POLITICAL SUBDIVISION<br>OF THE STATE OF TEXAS;<br>　　　　　*Defendants* | §<br>§<br>§<br>§ | |

**<u>ORDER</u>**

On this date, the Court considered Plaintiff David Bailey's motion for partial summary judgment as to liability (ECF No. 78), Defendant Oscar Ramos's motion for judgment on the pleadings or summary judgment in the alternative (ECF No. 81), Defendant City of San Antonio's motion for summary judgment (ECF No. 65), and the briefing filed in response to the parties' motions. After careful consideration, the Court issues the following order.

**BACKGROUND[1]**

Plaintiff David Bailey filed this action under 42 U.S.C. § 1983 against the City of San Antonio (the "City") and San Antonio Police Department ("SAPD") Officer Oscar Ramos for damages arising from his arrest in the early hours of April 28, 2018.

At 1:51 a.m., several SAPD officers, including Defendant Ramos and Christopher Dech were called to the scene of an assault. One victim sustained a brain injury and was left bloody and unconscious near Moses Roses Bar and Grill, located at 516 E. Houston Street in San Antonio, Texas. An ambulance arrived, and Ramos and Dech positioned themselves near the EMS unit at the scene in order to interview witnesses and protect the victim, who was being treated inside.

---

[1] The following facts are undisputed unless otherwise noted.

After Officer Dech checked on the victim, he took witness statements and tried to locate the suspect. Police body cameras and witness video footage captured the events that followed from multiple angles.[2]

Plaintiff began recording Defendant Ramos, who was waiting for Officer Christopher Dech to return to the scene. While Plaintiff was filming, another individual, Jack Miller, approached and began speaking with Ramos. Ramos directed Miller to "go over there"—gesturing behind Miller—and informed Miller that he would not speak to him. ECF No. 81 (Ramos MSJ), Exh. C at 1:43–45. Miller backed up but asked Ramos to clarify where he should stand. *Id.* at 1:46–54. Dech then approached, asked Plaintiff and Miller to "just listen," and explained that the area was an active crime scene. ECF No. 78 (Plaintiff MSJ), Exh. J (Dech body camera footage) at 23:02–07. Miller asked, "Where would you like us to stand?" *Id.* at 23:08–09. Pointing to a line in the pavement behind Miller and Plaintiff, Dech responded, "Stand back behind the line." *Id.* at 23:10–11. Plaintiff and Miller both immediately stepped back and turned to look around them, presumably to locate the line to which Dech was referring. *Id.* at 23:10–12. As Dech continued to give instructions ("Behind that line, film all you want—you're good."), Miller waived other witnesses who were recording the scene toward the line and said, "Let's go," directing everyone to move behind the line. *Id.* at 23:10–12.

The parties disagree about what happened next. According to Plaintiff, he began moving backwards in compliance with Dech's instructions, but Ramos nonetheless shoved him backward several feet so that he was behind the relevant line. ECF No. 78 at 8. Ramos asserts that he placed his hand on Plaintiff's chest to guide him backward, and that Plaintiff responded with some form of offensive contact with him—variously describing Plaintiff as having "swatted," "struck," "hit,"

---

[2] *See* ECF No. 78 (Plaintiff MSJ), Exhs. J, K; ECF No. 78 (Ramos MSJ), Exhs. C, D, E.

or "pushed" him, causing Ramos to "stagger." *See, e.g.*, ECF No. 81 at 4–5, 12, 17; ECF No. 90 at 5, 11–12, 18. Ramos further states that he "fear[ed] he was going to get struck by Bailey after he saw him beginning to clench his fist" and his chest beginning to tighten. ECF No. 90 at 18. Plaintiff insists that he never initiated contact with Ramos. *See, e.g.*, ECF No. 78 at 7–8 ECF No. 89 at 11, 17.

It is undisputed that Ramos then pushed Plaintiff back several feet and threw him to the ground, where he was handcuffed. Once Plaintiff was handcuffed, he alleges that Dech and Ramos picked him up in a painful manner, using his shoulder as leverage, and then put him up against a wall. Ramos then ordered Plaintiff to sit down, and then—without giving Plaintiff any warning or an opportunity to comply--swept Plaintiff's feet out from under him, causing him to fall down hard on his buttocks, injuring his spine. Plaintiff told the Officers that he had a heart problem, but declined EMS treatment at the scene. ECF No. 65-1 at 7. The day after his arrest, Plaintiff sought treatment for acute neck pain and abrasions on his wrist and knee at Northeast Baptist Hospital. *See* ECF No. 78-1 at 290 (hospital visit summary). In addition to the abrasions and neck pain, Plaintiff was diagnosed with a concussion, prescribed medications for pain and spasms, and ordered to follow up with his primary care physician. *Id.* at 290–93.

Plaintiff was charged with interfering with the duties of a public servant. ECF No. 78-1 at 5. After he appeared before the magistrate, he was released on bond. *Id.* When he returned to court on July 28, 2018, the Bexar County Prosecutor's Office dismissed the charge for lack of evidence. ECF No. 78-1 at 3.

Plaintiff filed his original complaint on April 14, 2020, asserting claims against the City of San Antonio and Officers Ramos and Dech under 42 U.S.C. § 1983 for violations of his constitutional rights. *See* ECF No. 1. The parties have since stipulated to dismiss the claims against

Dech. *See* ECF No. 57. Plaintiff alleges that Ramos interfered with his First Amendment right to record the SAPD Officers in the course of their duties and retaliated against him for seeking to exercise this right. ECF No. 1 at 5–7. He further alleges that Ramos violated his rights under the Fourth Amendment by conducting an unlawful seizure and arrest, using excessive force, and initiating a malicious prosecution. *Id.* at 7–11. Finally, he asserts that the City of San Antonio is subject to municipal liability for his injuries because of its unwritten policy of arresting individuals who record police officers even when they have not committed a crime and because of its inadequate training of SAPD Officers on the established rights of citizens. *Id.* at 11.

All three parties have filed motions for summary judgment. *See* ECF No. 78 (Plaintiff MSJ); ECF No. 81 (Ramos MSJ); ECF No. 65 (City MSJ). Plaintiff seeks partial summary judgment as to liability on his claims for wrongful arrest, wrongful seizure, excessive force, and municipal liability. *See* ECF No. 78. Ramos argues that the claims against him should be dismissed because he is entitled to qualified immunity. *See* ECF No. 81. The City asserts that Plaintiff has failed as a matter of law to establish the requirements for municipal liability set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). *See* ECF No. 65. The Court will briefly address several evidentiary objections before reaching their motions for summary judgment. Although the parties filed separate motions for summary judgment, there is significant overlap among the arguments made in the motions and accompanying responses. Accordingly, the Court will address the motions together.

## DISCUSSION

### I.   Evidentiary Objections

All three parties have raised evidentiary objections in their summary judgment briefing. See ECF No. 88 (City MSJ) at 1–2; ECF No. 91 (Ramos's objections); ECF No. 94 (Plaintiff's evidentiary objections).

The City seeks to strike the edited video footage attached as exhibits to Plaintiff's motion for summary judgment—including Dech's body camera footage—because they "were not presented in a complete or authenticated format." *See* ECF No. 88 at 1–2. Summary judgment evidence, however, need not be in admissible form as long as it can be presented in admissible form at trial. FED. R. CIV. P. 56(c)(2); *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form."). The video footage can be produced in a complete and authenticated format at trial**.**

Ramos objects to Plaintiff's medical records and the affidavit of scene witness Brian Howd as untimely disclosed. ECF No. 91 at 1–3 (citing ECF No. 78-1, Exh. F (medical records) and Exh. Q (Howd Aff.) (authenticating video footage of the incident taken on his cell phone)).[3] Whether these items should be excluded depends on whether the failure to disclose the evidence was harmless. FED. R. CIV. P. 37(c)(1). In determining whether failure to disclose is harmless, courts look to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Tex. A&M Rsch. Found. v. Magna Transp.,*

---

[3] Ramos's briefing also addresses his various objections to the testimony of Plaintiff's use-of-force expert, Thomas Tiderington, which the Court resolved in its November 21, 2022 order on Defendants' *Daubert* motions. *See* ECF No. 98.

*Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). Because neither party has addressed any of these factors in their briefing, however, the Court will defer ruling on these objections until trial.[4]

Finally, Plaintiff objects to Ramos's signed and dated statement (ECF No. 81-1), arguing that it is deficient under 28 U.S.C. § 1746, which requires unsworn declarations made in the United States to be supported with a written statement in substantially the following form:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

28 U.S.C. § 1746. Specifically, Plaintiff urges the Court to disregard the statement because Ramos's signature appears *before* the statement: "I declare under penalty of perjury that the foregoing is true and correct. Executed on July 11, 2022." *See* ECF No. 89 at 3; ECF No. 94. Thus, according to Plaintiff, it is unclear if the paragraph was entered after Ramos signed it or whether he saw it at all.

Here, Plaintiff relies on *Rodrigues v. U.S. Bank National Association*, in which the trial court excluded an undated declaration from consideration because the plaintiff could not direct the court to extrinsic evidence demonstrating when the declaration was signed. No. 3:20-CV-0291-D, 2021 WL 2717538, at *2 (N.D. Tex. Jul. 1, 2021). Unlike the declaration in *Rodrigues*, however, Ramos's declaration is dated and substantially complies with 28 U.S.C. § 1746. *Cf. Turner v. Parker*, No. 3:18-cv-00003, 2019 WL 5064086, at *5 (M.D. Tenn. Oct. 9, 2019) (reasoning that declaration was valid even though declarant's signature appeared *above* the words "I declare under penalty of perjury" because the location of the signature would not prevent the declarant from

---

[4] Without citing any authority, Ramos further asserts that the medical records are not relevant evidence of Plaintiff's injuries because they refer to the "patient diagnosis," which "is not evidence of an injury unless the patient is qualified to make such a determination through training, skill, or expertise." *Id.* at 1–2. This objection would appear to be more properly the subject of cross-examination than exclusion. Again, the Court will defer ruling on this objection until trial.

being prosecuted for perjury if it were proved that he knowingly made false statements).

Accordingly, the Court will treat Ramos's declaration as competent summary judgment evidence.

## II.     Summary Judgment Standard[5]

The Court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R.

CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must

either submit evidence that negates the existence of some material element of the non-moving

party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear

the burden of proof at trial, merely point out that the evidence in the record is insufficient to support

an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d

841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that

summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir.

1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are

not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539,

541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Rather, the nonmovant

must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential

component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.

---

[5] Ramos has moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure and/or summary judgment pursuant to Rule 56. *See* ECF No. 81. It is not clear from his briefing when he seeks to apply which standard. Presumably, the Rule 12(c) motion was motivated in part by his misapprehension that "[a] freestanding claim under 42 U.S.C. § 1983 fails to state a claim." *Id.* at 18. The Court will evaluate Plaintiff's claims under the summary judgment standard. To the extent that Plaintiff has failed to adduce sufficient factual support for any of his claims, Rule 56(e) confirms that he may not rest upon the mere allegations in his complaint when his adversary moves for summary judgment. *Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 213–14 (5th Cir. 1976).

1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable [trier of fact] to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). Although courts must "review evidence in the light most favorable to the nonmoving party, [courts] assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Buehler v. Dear*, 27 F.4th 969, 979-980 (5th Cir. 2022) (citing *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011)). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *Reeves*, 530 U.S. at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## III.   Analysis

### A.   Claims against Officer Ramos

Plaintiff moves for partial summary judgment as to Ramos's liability for wrongful arrest and seizure and for excessive force in violation of Plaintiff's rights under the Fourth Amendment,

as incorporated by the Fourteenth Amendment. *See* ECF No. 78. Defendant Ramos seeks summary judgment on Plaintiffs' claims for violations of his rights under the First and Fourth Amendments, arguing that they are precluded by the doctrine of qualified immunity, and on Plaintiff's claim for mental anguish damages.[67]

Qualified immunity protects public officials from suit and liability for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). In addressing whether qualified immunity applies, courts engage in a two-step inquiry, determining (1) whether a federal statutory or constitutional right was violated on the facts alleged; and (2) whether the defendant's actions violated clearly established rights of which a reasonable person would have known. *Id.* at 623–24. The two steps of the qualified-immunity inquiry may be performed in any order. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Under the second step of the inquiry, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (citations, quotation marks and alteration marks omitted). The Court does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Clearly established law is not

---

[6] "A good faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016).

[7] Ramos also contends that "any claims Bailey is attempting to pursue under the Fourteenth Amendment are subject to dismissal because his claims should [be] analyzed under the more specific constitutional sources of the First and Fourth Amendments." ECF No. 81 at 19 (citing *Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998)). The Court does not read the complaint to assert any claims directly under the due process clause of the Fourteenth Amendment. Because the references to the Fourteenth Amendment occur only in conjunction with Plaintiff's claims for violations of his rights under the First and Fourth Amendments, *see* ECF No. 1, the Court presumes that these references are merely intended to reflect the incorporation of those constitutional rights against the states. *McDonald v. Chicago*, 561 U.S. 742, 763 (2010) (recognizing that "that the Due Process Clause [of the Fourteenth Amendment] fully incorporates particular rights contained in the first eight Amendments.").

determined "at a high level of generality." *Id.* at 742. Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna,* 511 U.S. 7, 12 (2015) (citation and emphasis omitted). The inquiry must look at the specific context of the case. *Id.*

"The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotations and citation omitted). Courts must judge the reasonableness of an officer's conduct by taking into account the "'tense, uncertain, and rapidly evolving'" circumstances in which officers must often "'make split-second judgments . . . about the amount of force that is necessary in a particular situation.'" *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (quoting *Graham*, 490 U.S. at 397). From this perspective, courts should examine the objective reasonableness of an officer's belief that his or her conduct was lawful under the circumstances.

### 1.    Fourth Amendment – Unlawful Arrest and Seizure (Counts III & IV)[8]

Plaintiff alleges that Ramos violated his right to be free from arrest without probable cause under the Fourth Amendment, as incorporated under the Fourteenth Amendment. ECF No. 1 at 7–8. Ramos responds that he had probable cause to arrest Plaintiff for interference with his public duties under Texas Penal Code § 38.15 or assault by offensive conduct under Texas Penal Code § 22.01(a)(3). ECF No. 81 at 10–13.

---

[8] Because Plaintiff's claims for wrongful seizure of his cell phone (Count IV), for retaliation in violation of his First Amendment rights (Counts I & II), and for malicious prosecution (Count V) are predicated on the wrongfulness of his arrest, the Court will begin its analysis by addressing whether Ramos had probable cause to arrest Plaintiff.

To make an arrest without a warrant, an officer must have probable cause. *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). Probable cause requires a "basis for an officer to believe to a fair probability that a violation occurred." *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000). Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *accord Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *DeFillippo*, 443 U.S. at 36. Further, an officer's state of mind is not relevant to establish probable cause; an officer's provided reason for executing an arrest need not be the same offense for which the facts provide probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Under Section 38.15 of the Texas Penal Code, a person commits the offense of interference with public duties when, with criminal negligence, the person "interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). In order to violate the statute, a person's interference must consist of more than speech alone. *Id.* § 38.15(d) ("It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only."). Accordingly, the Fifth Circuit has held that "merely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to section 38.15" and thus does not constitute probable cause to arrest someone for interference. *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (holding that a plaintiff's yelling

and screaming at deputies about their right to search her home "alone does not take her conduct out of the realm of speech"); *see also Westfall v. Luna*, 903 F.3d 534, 544 (5th Cir. 2018). On the other hand, actions such as "ma[king] physical contact with any of the officers or physically obstruct[ing]" them from performing their legally authorized duties could constitute interference. *Freeman*, 483 F.3d at 414. The statute thus criminalizes: (1) interference in some way that is beyond speech with (2) the performance of an officer's official duties. *See Carney v. State*, 31 S.W.3d 392, 395–96 (Tex. App.—Austin 2000, no pet.).

"[F]ail[ing] to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech" can constitute interference. *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (holding that that plaintiff's conduct moved beyond speech where he failed to follow the deputy's instruction to move his truck). Several courts have affirmed convictions of defendants who failed to comply with an officer's instruction to move away from a crime scene. *See Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App.—Hous. [14th Dist.] 2007, pet. ref'd) (finding that defendant violated TEX. PENAL CODE § 38.15 by repeatedly disregarding officers' orders to stand away from crime scene); *Key v. State*, 88 S.W.3d 672, 676 (Tex. App.—Tyler 2002, pet. ref'd) (concluding that defendant "engaged in conduct other than speech in refusing to obey the directives of" a police officer to remain on the sidewalk, which the officer "believed was necessary to prevent [defendant] from assaulting" another individual).

Citing the video footage attached to his own motion for summary judgment, Ramos insists that Plaintiff refused to comply with his orders on three occasions prior to his arrest. If there is video recorded evidence that discredits the non-moving party's version of events, the court should not consider the evidence in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Instead, the court should view the evidence in the light depicted in the video

recording. *Id.* "There is only so much [courts] can place within the range of decisions by reasonable jurors." *Garcia v. Orta*, 47 F.4th 343, 353 (5th Cir. 2022).

According to Ramos, Plaintiff first refused to comply with his order to "go over there." ECF No. 90 at 5. The video footage clearly shows, however, that this instruction was directed at Miller, not Plaintiff. *See* ECF No. 81 (Ramos MSJ), Exh. C at 1:43–45. Indeed, Ramos's own declaration acknowledges as much. ECF No. 81-1, Ramos Decl. at 1 ("I repeatedly told Mr. Miller to back up and not to get close.").

Second, Ramos purports to have "*explicitly* directed Bailey *with a hand motion* to move off to the side." ECF No. 90 at 5 (emphasis added). The Court is not convinced that this communication through a hand motion can be considered "explicit." Here again, both the video footage and Ramos's own declaration indicate that this direction, "explicit" or not, was also directed at Miller, who asked Ramos to clarify where he should stand. *See* ECF No. 81 (Ramos MSJ), Exh. C at 1:46–54; ECF No. 81-1, Ramos Decl. at 1 ("Mr. Miller asked me where I wanted him to stand and I pointed for him to go to an area and told him I was not going to be talking to him.").

Third, Ramos maintains that Plaintiff "fail[ed] to move" when Dech informed Miller and Plaintiff that they needed to stand behind the line in the pavement. ECF No. 90 at 5–6. Here again, Ramos's characterization of the events is contradicted by the video footage attached as an exhibit to his own motion. ECF No. 81 (Ramos MSJ), Exh. C at 23:10–11. Plaintiff and Miller both appear to immediately step back and look around them in order to locate the line to which Dech was referring. *Id.* at 23:10–11. Moreover, it is not clear that Plaintiff even had an opportunity to fully comply with the order, given that Ramos lunged at Plaintiff approximately one second after Dech's instructions. *See id.*

While Plaintiff appears to initially comply with the order to move behind the line, there is a genuine fact issue as to whether Plaintiff was complying with the officers' instructions in the moments before Ramos lunged at him. Specifically, citing video footage of the incident, Ramos asserts that Plaintiff initiated some form of offensive contact with him—variously describing Plaintiff as having "swatted," "struck," "hit," or "pushed" him, causing Ramos to "stagger." *See, e.g.*, ECF No. 81 at 4–5, 12, 17; ECF No. 90 at 5, 11–12, 18. Plaintiff insists that he never initiated contact with Ramos. *See, e.g.*, ECF No. 78 at 7–8 ECF No. 89 at 11, 17. Dech testified at his deposition and noted in his police report that he did not witness Bailey make contact with Ramos at the scene. *See* ECF No. 89-1, Exh. C, Dech Dep. at 11:8–12:10; ECF No. 65-1 at 10 ("I did not observe the interaction between Officer Ramos and [Bailey] as they were to my right and I was looking to my left[.]"). Nor did Captain Jesse Salame, the representative deposed on behalf of the City, observe Bailey make contact with Ramos in his review of the video footage of the arrest. ECF No. 77-2, Salame Dep. at 45:13–17. Because the video footage does not offer a clear view of the nature of Plaintiff's contact with Ramos, a jury would need to rely on credibility determinations and weigh the evidence to resolve the question. Because of these disputed facts, the Court cannot conclude as a matter of law that Ramos had probable cause to arrest Plaintiff for interference with public duties.

Based on the alleged "swat," Ramos alternatively argues that he also had probable cause to arrest Plaintiff for assault. ECF No. 81 at 12.[9] Under § 22.01(a)(3) of the Texas Penal Code, a

---

[9] Here, Ramos relies on the Fifth Circuit's decision in *Arizmendi v. Gabbert* for the proposition that "[a] warrantless arrest is valid so long as the officers had probable cause to arrest the individual for any crime based on the facts within their knowledge." ECF No. 81 at 12 (citing 919 F.3d 891, 901 (5th Cir. 2019)). Plaintiff objects that this principle, known as the "related offense" doctrine applies only when an arresting officer effects an invalid warrant. ECF No. 89 at 12. In fact, the opposite is true—the related offense doctrine applies only to *warrantless* arrests, based on the Fifth Circuit's reasoning that, "[i]n warrantless arrests, there is no threat to a citizen's Fourth Amendment rights where the officer had probable cause to arrest, albeit not for the offense he chose to charge." *Arizmendi*, 919 F.3d at, 903. This approach is intended to "strike a 'compromise' between forcing officers making warrantless arrests to routinely charge arrestees with every possible offense 'to increase the chances that at least one charge would survive

person commits the offense of assault by offensive contact when he intentionally or knowingly causes physical contact with another that the person knows or should reasonably believe that the other will regard as offensive or provocative. *Trujillio v. State*, 809 S.W.2d 593, 596 (Tex. App.— San Antonio 1991, no pet.). Again, however, summary judgment on this defense would be inappropriate because there are genuine issues of fact concerning the nature of the contact between Plaintiff and Ramos.

### 2.    Fourth Amendment – Unlawful Seizure (Count IV)

Plaintiff asserts that his cell phone was seized without a warrant or probable cause in violation of the Fourth Amendment. ECF No. 1 ¶¶ 52–53.

It is well established that "people have a constitutional right to be free from unreasonable searches and unreasonable seizures." *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020). "Although the Fourth Amendment does not, by its text, require that searches be supported by a warrant . . . [the Supreme Court] has inferred that a warrant must generally be secured for a search to comply with the Fourth Amendment," subject to certain exceptions. *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2539–40 (2019). A search incident to lawful arrest is one such exception. *Riley v. California*, 573 U.S. 373, 382 (2014); *United States v. Robinson*, 414 U.S. 218, 235 (1973).

Plaintiff's unlawful seizure claim hinges on his wrongful arrest claim—a search incident to *unlawful* arrest would not fall under the warrant exception and thus may violate the Fourth Amendment. *See Haywood v. City of El Paso*, No. EP-20-CV-114-KC, 2021 WL 5072029 (W.D.

---

the test for probable cause,' at one extreme, and allowing officers to justify 'sham or fraudulent arrests on the basis of ex post facto justifications that turn out to be valid,' at the other." *Arizmendi*, 919 F.3d at 901 (citing *Vance v. Nunnery*, 137 F.3d 270 (5th Cir. 1998)) (internal citations omitted). The related offense doctrine does not extend to warrant-based arrests, however, because "[a] police officer who obtains an arrest warrant and then intentionally arrests someone he knows to be innocent should not benefit from a doctrine designed to protect police officers . . . for reasonable mistakes in judgment made when they effect warrantless arrests for conduct they believe is criminal based on their observations or 'first-hand knowledge.'" *Vance*, 137 F.3d at 275.

Tex. Oct. 26, 2021) (citing *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987) (explaining that an arrest must be lawful for the search-incident-to-arrest exception to apply)). Thus, Plaintiff's unlawful seizure claim will depend on the jury's determination of whether Plaintiff "swatted" Ramos in the moments before Ramos lunged at him. Summary judgment is therefore inappropriate. *Sanford*, 555 F.3d at 181.

### 3.    First Amendment –Retaliation & Recording (Counts I & II)

Plaintiff asserts that he was arrested in retaliation for recording the police in violation of his rights under the First Amendment. ECF No. 1 at 6–7. Generally, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. *Batyukova v. Doege*, 994 F.3d 717, 729–30 (5th Cir. 2012). To establish a First Amendment retaliation claim, a plaintiff must prove that: 1) he was engaged in constitutionally protected activity; 2) the officer's action caused him to suffer an injury that would chill a person from ordinary firmness from continuing to engage in that activity, and; 3) the officer's actions were substantially motivated against his exercise of constitutionally protected activity. *Id.* at 730.

In the context of retaliatory arrests, the Fifth Circuit has mandated that "courts need to be alert to arrests that are prompted by constitutionally protected speech." *Mesa v. Prejean,* 543 F.3d 264, 273 (5th Cir. 2008). Still, there can be no claim for retaliatory arrest under the First Amendment when the arrest is supported by probable cause. *Reichle v. Howard*, 566 U.S. 658, 2093 (2012). If probable cause exists for an arrest, any argument that that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment. *Mesa*, 543 F.3d at 273 (5th Cir. 2008).

Ramos asserts that Plaintiff's claim for retaliation fails as a matter of law because he had probable cause to arrest Ramos for interference with public duties, or, in the alternative, for assault

by offensive conduct. ECF No. 81 at 14–15. However, as discussed, there are questions of fact about the circumstances of Plaintiff's arrest that must be resolved by the jury that preclude summary judgment on the question of probable cause. Accordingly, the Court will proceed to analyze Plaintiff's claims for violations of his First Amendment rights assuming that Ramos did not have probable cause to arrest him.

With respect to the first element of Plaintiff's retaliation claim, Plaintiff was plainly engaged in the constitutionally protected activity of recording the police, which was clearly established right at the time of his arrest. *See Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017) (confirming that the First Amendment accords a right to record the police, subject to reasonable time, place and manner restrictions). As for the second element, Plaintiff asserts that he has suffered injuries—being subjected to excessive force and wrongfully arrested—that would chill a person from ordinary firmness from continuing to engage in the protected activity. *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002). Finally, Plaintiff has offered evidence suggesting that Ramos's conduct was motivated by Plaintiff's protected activity. Pointing to video footage of the incident, Plaintiff observes that Ramos did not pay any attention to people who were walking through the crime scene but were not recording police. *See* ECF No. 89 at 15. Ramos responds that "no other citizens approached the EMS unit to present a security problem to the victim in the EMS unit." ECF No. 93 ¶ 3. Ramos further notes that Miller and other individuals were clearly recording the officers but were not arrested. *Id.* But Ramos's mere disagreement with Plaintiff's interpretation of the evidence does not entitle Ramos to summary judgment, but instead present a question of fact for resolution by the jury.[10]

---

[10] The Court further notes that Ramos's briefing itself suggests that the arrest may have been motivated by other protected activity—Plaintiff's hostile comments toward the police in the period leading up to his arrest. Ramos devotes several pages of briefing to descriptions of Miller's plan to go downtown and film police officers on the evening in question and the offensive language they used toward the Officers in the period leading up to the arrest.

Plaintiff's original complaint alleges a claim for violation of his right to record police. *See* ECF No. 1 at 5–6. Ramos notes that the evidence demonstrates that Plaintiff continually recorded the officers until the time of his arrest, and that there is no First Amendment right to record one's own arrest. ECF No. 81 at 15 (citing *Dave v. Laird*, No. 1:20-cv-209, 2021 WL 7367084, at *12 (S.D. Tex. Nov. 30, 2021) ("Although the general right to film the police is clearly established in this circuit," the plaintiff failed to cite and the court could not locate any "Fifth Circuit precedent or persuasive authority indicating that he had the right to personally film his own detention, with his own hand-held camera phone, while it was happening.")). In response, Plaintiff appears to confirm that he seeks to recover for on a retaliation theory only and does not intend to pursue a claim that he was prevented from recording the police:

> Plaintiff's position is that he should have never been arrested for exercising his free speech rights**. Plaintiff is not demanding a right to record his unlawful arrest,** rather he is standing on his right to be free from arrest when lawfully recording police. Defendant Ramos violated Plaintiff's clearly established right to record the police and thus Defendant is not entitled to qualified immunity. For that reason, **Plaintiff's First Amendment Retaliation claim must proceed.**

ECF No. 89 at 15 (emphasis added).

Based on this representation and the foregoing analysis, Defendant's motion for summary judgment is GRANTED as to Plaintiff's claim for preventing him from recording the police (Count I) and DENIED as to Plaintiff's claim for retaliation under the First Amendment (Count II).

---

*See* ECF No. 81 at 3–4; ECF No. 90 at 3–4. It is not clear to the Court how any of this information is relevant to any the issues in this case. Miller and Bailey's plan to spend the evening "harassing" police, for example, has no bearing on whether Ramos had probable cause to arrest Plaintiff because there is no reason to believe that this information was known to Ramos at the time of the arrest. Bailey and Miller's disparaging comments about and toward the Officers are similarly immaterial to the question of probable cause. Any verbal interaction that Bailey had with the police would not alter the nature of his claim because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462–63 (1987); *see also Freeman*, 483 F.3d at 414 ("merely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to section 38.15" and thus does not constitute probable cause to arrest someone for interference). Whether this Court condones Plaintiff's uncivil conduct is not relevant.

### 4.        Fourth Amendment – Malicious Prosecution (Count VI)

Bailey asserts a claim for malicious prosecution under the Fourth Amendment. ECF No. 1 at 10–11. Ramos's motion for summary judgment incorrectly asserts that there is no freestanding claim for malicious prosecution under 42 U.S.C. § 1983. *See* ECF No. 81 at 18 (citing *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003)). Several months before he filed his motion for summary judgment, however, the Supreme Court recognized a § 1983 claim for malicious prosecution under the Fourth Amendment in *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). The Court noted that nearly every circuit, including the Fifth Circuit, has held that a malicious prosecution is actionable under the Fourth Amendment. *Id*. at 1337 (citing *Winfrey v. Rogers*, 901 F.3d 483, 491–93 (5th Cir. 2018)).

"[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." 142 S. Ct. at 1337. To prevail on such a claim, the plaintiff must establish, "among other things, that he obtained a favorable termination of the underlying criminal prosecution." *Id.* It clarified however, that "a plaintiff need only show that his prosecution ended without a conviction," not that it "ended with some affirmative indication of innocence." *Id.* at 1335, 1341.

The parties do not dispute that Plaintiff's prosecution ended without a conviction—the charge against him was dismissed. Instead, the parties disagree about what "other things" must be established to support a claim for malicious prosecution. *Id.* at 1337. Plaintiff argues that his claim for malicious prosecution should proceed to trial simply because the charge against Plaintiff was dismissed. *See* ECF No. 89 at 21. Ramos responds that *Thompson* is inapplicable here because it contemplated liability for "unreasonable seizure pursuant to legal process." ECF No. 93 ¶ 5.[11]

---

[11] Plaintiff does not assert that Ramos waived this argument by raising it for the first time in his reply brief. The Court addresses—and endorses—Ramos's view here but will entertain a motion to reconsider this ruling before

While the Court agrees that Thompson contemplates a wrongful seizure pursuant to legal process, the Court is not convinced that it is inapposite here.

*Thompson* explicitly states that "[b]ecause this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff." 142 S. Ct. at 1337 n.2 (citing *Manuel v. Joliet*, 580 U.S. 357, 365–366 (2017)). In *Manuel*, the Supreme Court described violations of the Fourth Amendment before and after the start of legal process:

> The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur **when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.** Then, too, a person is confined without constitutionally adequate justification. **Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement.**

*Manuel*, 580 U.S. at 367 (citations omitted).

In order to prevail on such a claim, Plaintiff must establish that: (1) the affiant, in support of the seizure, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth," and (2) "the allegedly false statement is necessary to the finding of probable cause." *see also Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). In other words, the officer's false statements must lead to some legal process beyond merely "causing charges to be filed without probable cause." *Castellano*, 352 F.3d at 953. In the context of a warrantless arrest, this legal process can include the arrestee's appearance, within 48-hours of his arrest, before a judicial

---

trial. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *see also Thompson v. Dallas City Attorney's Office*, 913 F.3d 464, 471 (5th Cir. 2019) ("A district court does not abuse its discretion when it considers an argument raised for the first time in a reply brief so long as it gives the non-movant an adequate opportunity to respond prior to a ruling.") (quotations omitted).

officer, who must then make "the same [probable cause] determination that would have been made as part of the warrant application process." *See Manuel*, 580 U.S. at 383 (Alito, J., dissenting). Even a release on bond may constitute a seizure under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994) (concluding that claim asserted by arrestee who was released on bond claim before the charges against him were dismissed properly arose under the Fourth Amendment); *id.* at 279 (Ginsburg, J., concurring) (noting that a defendant is "equally bound to appear, and is hence 'seized' for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court").

Ramos asserts that Plaintiff's malicious prosecution claims fails as a matter of law because "[n]owhere in his Original Complaint does Bailey contend or set forth any facts that Officer Ramos knowingly or recklessly made misstatements or omissions that were put into an affidavit." ECF No. 90 ¶ 5. The Court disagrees.[12] The complaint alleges that Defendants "initiated criminal prosecution against Mr. Bailey for Interfering with the Duties of a Public Servant," that "[t]here was no probable cause for the criminal prosecution against Mr. Bailey," and that Defendants "acted intentionally, with actual malice and ill will, and without legal justification, knowingly, willfully, and wantonly evidencing a complete and utter disregard for the truth in instituting legal proceedings against Mr. Bailey." ECF No. 1 at 10–11.

---

[12] Plaintiff did not move for summary judgment on his malicious prosecution claim. *See generally* ECF No. 78. Before the burden shifts to Plaintiff to establish that summary judgment is inappropriate, Ramos, as the movant, "must submit evidence that *negates* the existence of some *material element* of the non-moving party's claim or defense, or, if the *crucial issue* is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an *essential element* of the nonmovant's claim or defense. *Little*, 952 F.2d at 847 (emphasis added). "Although Rule 56(e) does not allow a party to rest upon the mere allegations or denials of his pleading when his adversary moves for summary judgment, the Rule does not relieve the movant of his duty to establish the absence of a genuine issue as to material facts. The moving party still has the initial burden, under Rule 56(c), of showing the absence of a genuine issue concerning any material fact, and of showing that judgment is warranted as a matter of law." *Boazman*, 537 F.2d at 213–14 (citations and quotation marks omitted). The moving party does not meet this burden by simply laying out every potential point of disagreement with or counterargument to the opposing party's positions. The Court will not presume that Ramos has met his burden on summary judgment simply by virtue of having filed a motion.

Moreover, in his summary judgment briefing, Plaintiff offers evidence that contradicts specific statements in Ramos's Incident Report (ECF No. 77-1 at 8–9). Plaintiff does not suggest that Ramos was merely mistaken about these events but repeatedly insists that Ramos intentionally lied about them. *See, e.g.*, ECF No. 78 at 9 ("Defendant Ramos's lies are completely dismantled by Officer Dech's bodycam footage."). Plaintiff denies that he was ever in noncompliance with any of the Officers' instructions or initiated contact with Ramos. *Id.* at 8–9. He characterizes the statement in Ramos's police report that "[Bailey] pushed me with his left hand" as "a clear lie." *Id.* at 7 (citing ECF No. 77-1 at 8). "Officer Dech's bodycam footage," Plaintiff continues, "shows no such 'swat' or 'push,' and completely contradicts Ramos's incident report narrative and deposition testimony on multiple points." *Id.* He describes the following narrative in Ramos's report as "Ramos's fabrications as to his reasoning for effectuating than unlawful arrest":

> [I] observed [Bailey's] left hand begin to clench. Based on my training and experience, I observed [Bailey] showing signs of aggression and I did not want [Bailey] at [sic] possibly assault me or injure others around us that I attempted to place Bailey under arrest for interference with duties at a crime scene.

*Id.* at 7 (citing ECF No. 77-1 at 8).

These factual disputes alone do not require denial of summary judgment on Plaintiff's malicious prosecution claim. To raise a genuine issue of material fact, Plaintiff need not merely show that statements were arguably false; he must also show that a reasonable jury could conclude that "the allegedly false statement [was] necessary to the finding of probable cause." *Manuel*, 137 S. Ct. at 918; *see also Franks*, 438 U.S. at 156. To determine whether any false statement was necessary for this finding, the Court must consider the faulty statement as if those errors and omissions were removed, and then examine whether a hypothetical "corrected affidavit" would still give rise to a finding of probable cause. *See Franks*, 438 U.S. at 156. As the Supreme Court has explained, probable cause is a "practical and common-sensical standard" which uses the

"totality of the circumstances" to determine whether a person of reasonable caution would believe that the individual had committed the crime for which he is being arrested. *Florida v. Harris*, 568 U.S. 237, 243–44 (2013).

A police report containing only undisputed information would include the following facts: (1) Plaintiff was recording Ramos at the scene of an assault to which the Officers had responded, where Ramos was guarding the ambulance; (2) Ramos directed Miller to step back; (3) Dech arrived and explained that it was a crime scene and directed the parties to back up; (4) Ramos put his right hand on Plaintiff's chest to move him backward and felt Plaintiff's body and chest tense up. Such a report would not give rise to a finding of probable cause that Plaintiff was interfering with public duties. *See Franks*, 438 U.S. at 156. Accordingly, a reasonable jury could conclude that "the allegedly false statement[s]" were "necessary to the finding of probable cause." *Manuel*, 137 S. Ct. at 918; *Franks*, 438 U.S. at 156. Plaintiff has demonstrated a genuine issue of material fact as to whether he was subject to a seizure pursuant to wrongful legal process in violation of his Fourth Amendment rights. Because a rational factfinder could conclude that Ramos violated the Fourth Amendment by causing, through his allegedly false statements, the "initiation of charges without probable cause," *Thompson*, 142 S. Ct. at 1337, the Court must proceed to the qualified immunity question. *Lytle v. Bexar Cnty.*, 560 F.3d 404, 412 (5th Cir. 2009).

The Fourth Amendment right "to be free from police *arrest* without a good faith showing of probable cause" based on "deliberately or reckless false statements," has been clearly established since the Supreme Court's decision in *Franks* in 1978. *Winfrey,* 901 F.3d at 494 (emphasis added). It was not clear until the Supreme Court's decision in *Thompson* in 2022, however, that this right extends to the "wrongful initiation of charges without probable cause" more broadly, including claims for wrongful prosecution. Compare *Thompson*, 142 S. Ct. at 1337

("District Courts and Courts of Appeals have decided numerous cases involving Fourth Amendment claims under § 1983 for malicious prosecution.") with *Morgan v. Chapman*, 969 F.3d 238, 245–46 (5th Cir. 2020) ("There is no constitutional right to be free from malicious prosecution."); *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. Oct. 23, 2020) ("[T]here is no freestanding right under the Constitution to be free from malicious prosecution. Rather, facts amounting to malicious prosecution are properly alleged as part of an actual Fourth Amendment claim, such as unreasonable search or seizure. There is no independent constitutional claim for malicious prosecution.").

It was not clear in 2018 that the scope of Plaintiff's right to be free from wrongful seizure pursuant to legal process extended beyond arrest warrants predicated on a police officer's false statements. Accordingly, based on the facts of this case, the Court concludes that Ramos is entitled to qualified immunity as to Plaintiff's claim for wrongful prosecution in violation of his rights under the Fourth Amendment.

### 5.    Fourth Amendment – Excessive Force (Count V)

Plaintiff asserts a claim for excessive force in violation of the Fourth Amendment. ECF No. 1 at 9–10. In his motion for partial summary judgment, Plaintiff identifies five allegedly excessive instances of force by Ramos, who: (1) shoved Plaintiff; (2) grabbed Plaintiff's shirt and pulled it over his head to slam him to the ground; (3) knelt on Plaintiff's neck and shoulder; (4) pulled Plaintiff up by his handcuffed hands rather than by his upper arms after Plaintiff informed Defendant Ramos that his shoulder was injured and hurt; and (5) swept Plaintiff's legs out from under him after he was handcuffed and in police custody. ECF No. 78 at 9.

For his part, Ramos acknowledged in both his incident report and his deposition that Plaintiff did not resist arrest. *See* ECF No. 78-1 at 9 (Incident Report); *id.* at 65, Ramos Dep. at

54:19–20. Nonetheless, he argues that his use of force was appropriate because of his "fear he was going to get struck by Bailey after he saw him beginning to clench his fist." ECF No. 90 at 18.

As a preliminary matter, Ramos asserts that the Court should limit its analysis to his conduct in "shov[ing] Mr. Bailey several feet, before slamming him to the ground and handcuffing him" because it is the only use of force specifically identified in the complaint. *See* ECF No. 90 at 15–16. The Court disagrees. The complaint generally asserts that "Defendants use [sic] more physical force than necessary to effectuate the arrest." ECF No. 1 ¶ 9. This theory is broad enough to encompass all of the conduct addressed in Plaintiff's motion for summary judgment. Moreover, the summary judgment record confirms that Ramos was or should have been on notice of the scope of Plaintiff's excessive force claim well before the close of discovery in May 2022. *See* ECF No. 55 (Scheduling Order); *see, e.g.*, ECF No. 68-1 at 8, Expert Report of Chief Thomas J. Tiderington (October 12, 2021) (noting that Ramos "kicked Bailey's feet out from under him causing him to fall to the ground in a seated position").

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *See Tennessee v. Garner*, 471 U.S. 1, 7–22 (1985). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). The first element turns on the second and third, *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018), which are typically analyzed together according to the factors enunciated in *Graham*. *See Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (analyzing the second and third factors together).

To establish the first element of an excessive force claim, a plaintiff must prove more than a de minimis injury. *Tarver*, 410 F.3d at 752. "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (citation and quotation marks omitted). The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is "directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 101 F.3d 430, 435 (5th Cir. 1996); *see Williams v. Bramer*, 417 180 F.3d 699, 703 (5th Cir. 1999) ("In determining whether an injury caused by excessive force is more than de minimis, we look to the context in which that force was deployed.").

The second and third elements are not governed by a single generic standard. *Graham*, 490 U.S. at 393. Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on the "totality of the circumstances." *Garner*, 471 U.S. 1, 8–9 (2010); *see also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case"). In making this determination, the Fifth Circuit has instructed courts to apply the so-called *Graham* factors, which include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Poole v. City of Shreveport*, 691 F.3d 624, 638 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). Courts may also consider the "extent of [the] injury inflicted" to determine whether an officer's force was justified, or if it instead "evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur.'" *Deville v. Marcantel*, 567 F.3d 156,168 (5th Cir. 2009) (quoting *Whitley*, 475 U.S. at 321). The

underlying intent or motivation behind an officer's actions is irrelevant to this determination. *See Poole*, 691 F.3d at 628.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). While officers may consider a suspect's refusal to comply with instructions in assessing whether physical force is needed to effectuate compliance, they must assess not only the need for force, but also "the relationship between the need and the amount of force used." *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Deville*, 567 F.3d at 167. "The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332–33 (5th Cir. 2020).

The Fifth Circuit has emphasized that determining "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury." *Lytle*, 560 F.3d at 411. "When facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably," a court "can hold that an officer acted reasonably as a matter of law." *Id.* at 412. However, "when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences," a court "must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff." *Id.* If a rational factfinder could conclude that Ramos violated the Constitution, the Court must proceed to the qualified immunity question. *Id.*

With respect to the first element of an excessive-force claim, Plaintiff has produced evidence of his injuries, including an abrasion to his wrist and knee, acute neck pain, and a concussion. *See* ECF No. 78-1 at 290 (hospital visit summary). He was prescribed medications for

pain and spasms and ordered to follow up with his primary care doctor within three to five days. *Id.* at 290–93. He has testified that he still experiences pain in his neck, shoulder, and spine and needs occasional cortisone shots. ECF No. 81-2, Plaintiff Dep. at 12:25–15:19 (describing neck and shoulder pain); ECF No. 89-1, Plaintiff Aff. ¶ 15 (describing "shock of pain" through his spine caused by leg sweep that "still hurts today"). Plaintiff's testimony as to his ongoing pain and the medical records he provided are sufficient to create a fact issue as to whether he suffered more than a de minimis injury. *See Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (allegations of continuing pain, read in light of the contemporaneous medical documentation noting contusions, acuste strains, and bruised ribs, stated more than a *de minimis* injury). The question, then, is whether Ramos's use of force was clearly excessive and objectively unreasonable.

Unlike Plaintiff's claims for wrongful seizure and retaliation, his claim for excessive force is not predicated on the wrongfulness of his arrest. Indeed, an officer may face liability for excessive force even where an arrest is clearly justified. *See, e.g.*, *Gomez v. Hernandez*, No. SA-20-CV-01252-XR, 2022 WL 17331263, at *5 (W.D. Tex. Nov. 28, 2022) (denying summary judgment on excessive force claim after plaintiff pled nolo contendere to resisting arrest). Similarly, an officer may be justified in his use of force to effect an arrest even when the arrest itself was invalid. *See Freeman v. Gore*, 483 F.3d 404, 416–17 (5th Cir. 2007) ("That the deputies' arrest of Freeman was unlawful on the facts alleged does not, however, mean that any force used by the deputies to effectuate the arrest was necessarily excessive."). Instead, excessive force claims are "separate and distinct from" unlawful arrest claims, and the Courts must analyze a claim for excessive force without regard to whether the arrest itself was justified. *Id.*

Nonetheless, the analysis is slightly more complicated here, where Ramos cites the same conduct—the alleged "swat"—as a basis for both the arrest itself and his use of force. Thus, at

least with respect to the "swat," the issues of fact bearing on whether Ramos had probable cause to arrest Plaintiff in the first place are inextricably bound up with the facts a jury would consider in determining whether and what kind of physical force was justified in effecting the arrest. *See Graham*, 490 U.S. at 396 (considering whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight). In other words, the fact questions as to Bailey's compliance and the nature of his contact with Ramos before the arrest create genuine fact issues as to whether Ramos's use of force exceeded the bounds of the Fourth Amendment. *Deville*, 567 F.3d at 168. Plaintiff's testimony, if believed, could lead a reasonable jury to conclude that Ramos used excessive force by shoving Plaintiff, tackling Plaintiff, applying bodyweight to Plaintiff's neck and shoulder, yanking the handcuffed Plaintiff up by his injured shoulder, and by leg-sweeping the handcuffed Plaintiff causing him to fall to the ground. Accordingly, the Court must proceed to the second step of the immunity inquiry.

Bailey's right to be free from excessive force during an investigatory stop or arrest was clearly established at least as early as August 2007. *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012). "While the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force used in a given situation may not have been clear to a reasonable officer at the scene." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013). Accordingly, the Court analyzes each use of force independently to determine whether Ramos had fair warning that it violated Plaintiff's constitutional rights.

Whether Ramos's use of force in shoving Plaintiff and tackling him to the ground violates a clearly established right depends on whether Ramos reasonably perceived Plaintiff as a threat. Compare *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (holding that "it was clearly

established . . . that pushing . . . a suspect who is neither fleeing nor resisting is excessive.") and *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (reversing grant of summary judgment on qualified immunity where plaintiff suffered a broken shoulder as a result of being tackled by officers who lacked reasonable suspicion to detain or frisk him and from whom he was not fleeing) with *See Davidson v. AT&T Mobility,* No. 3:17-CV-0006-DLLC, 2019 WL 486170, at \*7 (N.D. Tex. Feb. 7, 2019) (holding that when officer pushed the plaintiff out the door of a store and the plaintiff rapidly turned toward him, in this moment the officer could have perceived this act as a threat). As discussed, under Plaintiff's version of events, there are genuine issues of fact as to whether Plaintiff was complying with the Officer's orders or "swatted" Ramos, and whether Ramos reasonably feared that Plaintiff would assault him. Accordingly, it is unclear whether Ramos acted reasonably in his efforts to detain and arrest Plaintiff. On Bailey's account, he committed no crime, posed no threat to officers or anybody else, and did not resist. Thus, taking the facts in the light most favorable to Plaintiff, a jury could conclude that Ramos's use of force was objectively unreasonable in light of clearly established law at the time of the incident. *Id.* At a minimum, determining whether Ramos's conduct was objectively reasonable requires factfinding and credibility assessments and, accordingly, precludes summary judgment on the basis of qualified immunity. *Sanford*, 555 F.3d at 181; *see also Tarver*, 410 F.3d at 754.

While Plaintiff was being handcuffed, Ramos placed his knee on Plaintiff's shoulder for approximately 9 seconds. ECF No. 81 (Ramos MSJ), Exh. C at 2:14–25. While kneeling on a subdued subject can constitute force that violates the Fourth Amendment, *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021), briefly placing one's knee on an arrestee body while he or she is being handcuffed does not violate a clearly established right. *See Verdin v. Cook*, No. CV 18-548, 2019 WL 917730, at \*3 (E.D. La. Feb. 25, 2019), *aff'd*, 796 F. App'x 854 (5th Cir. 2020)

(concluding that it was not clearly established that "using some degree of force while handcuffing an individual, such as temporarily placing a knee on the arrestee's lower back," violated a constitutional right).

Similarly, Plaintiff fails to cite, and the Court has not identified, any cases indicating that lifting a suspect by his handcuffs constitutes excessive force. *Cf. Fowler v. Edmonson*, No. 1:15CV023-SA-DAS 2016 WL 4919268, at *3 (N.D. Miss. Sept. 12, 2016) (holding that officer was entitled to qualified immunity because plaintiff had not established that general state of the law was such that the officer would have had fair warning that lifting plaintiff up by his handcuffs violated the plaintiff's constitutional rights). Both of the cases on which Plaintiff relies involved extreme uses of force on handcuffed individuals. *See Gomez v. Chandler*, 163 F.3d 921, 922 (5th Cir. 1999) (officers slammed handcuffed suspect into a concrete floor and began to punch him in the face); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) (deputy delivered "side strikes" to handcuffed suspect who alleged that he was limp on the floor).

On the other hand, Ramos had fair notice that the use of a leg sweep on a subdued suspect who has not resisted arrest violates a clearly established right. *See Sanders v. Vincent*, Civil Action No. 3:15-CV-2782-D, 2016 WL 5122115, at *10 (N.D. Tex. Sep. 21, 2016). (where the suspect "was not resisting arrest or attempting to flee when [an officer] perform[s] a leg sweep to take him down . . . the Fourth Amendment's reasonable test . . . is clear enough that [the officer] should have known that he could not constitutionally use a leg sweep to forcibly take [the suspect]"); *id.* ("Even in light of Sanders' admitted failure to cooperate with Officer Bagley's requests during the investigatory detention, the facts alleged show that there was no need for force."); *Backe v. City of Galveston*, No. 10–CV–388, 2014 WL 794025, at *17 (S.D. Tex. Feb. 27, 2014) (holding that it

was objectively unreasonable under clearly established law for police officer to use forcible takedown without giving suspect any opportunity to submit voluntarily to officers' control).

Based on the fact issues as to the objective reasonableness of Ramos's use of force, Plaintiff's motion for partial summary judgment on his claim for excessive use of force is **DENIED**. Ramos's motion is **GRANTED IN PART** to the extent that Plaintiff's claims are premised on Ramos briefly placing his knee on Plaintiff's back while he was being handcuffed and pulling Ramos up to a standing position by his handcuffs, and **DENIED IN PART** in all other respects.

### 6.    Damages

Ramos argues that Bailey's claims for compensatory damages for mental anguish, lost wages, and disfigurement should be dismissed. ECF No. 81 at 19. Plaintiff has confirmed that he is not seeking any damages for lost wages or disfigurement, but maintains that Ramos's position on mental anguish damages relies on "one response to a vague question, out of context[,]" during Plaintiff's deposition. ECF No. 89 at 23. Indeed, the transcript of Plaintiff's deposition contains the following exchange:

> Q.    Okay. And as far as your mental anguish, how much are you asking for, for that, for the past? Or are you not asking for that?
> A.    I'm really not.
> Q.    Okay. So you're not asking for past mental anguish?
> A.    No.
> Q.    Okay. What about future mental anguish?
> A.    No.
> Q.    Okay.
> A.    My main concern in the pain.

ECF No. 81-2, Plaintiff Dep. at 34:11–21. Plaintiff's counsel did not object to any of these questions, nor do Plaintiff's statements appear to have been corrected using errata sheets. *See id.*

In response, Plaintiff points to deposition testimony suggesting that he misunderstood the question and notes that the term "mental anguish" was never defined for him. ECF No. 89 at 22 (citing ECF No. 81-2, Plaintiff Dep. at 10:8–10 ("As far as damages from civil rights violations, I don't know what is recoverable, what's not. I -- I don't -- I'm not an attorney.")). Nonetheless, Plaintiff argues that his deposition testimony and a sworn affidavit submitted approximately two months later both support his claim for mental anguish damages: "[Plaintiff] speaks about the pain caused by Officer Ramos, and how it has impacted a broad range of his life including making love to his wife, doing hobbies and other things he used to be able to enjoy, to simple tasks, such as putting on pants." *Id.* at 22–23 (citing ECF No. 81-2, Plaintiff Dep. at 9:8–10). Plaintiff's affidavit describes his injuries in greater detail:

> Since being assaulted by Officer Ramos, I often suffer from intense pain in my neck and right shoulder area. This pain affects my daily life tremendously. I did not have any pain in my neck and right shoulder before Officer Ramos assaulted me. I am unable to do daily routines, such as doing yard work, getting up out of bed with the ease I used to, working in the garage, or spending quality time with my family. Simple tasks such as brushing my teeth, showering, shaving, and putting on pants causes discomfort. These are just small samplings of my daily routines that have been impacted as a result of Officer Ramos's excessive use of force against me.

ECF No. 89-1, Plaintiff Aff. ¶ 21.

None of the testimony that Plaintiff has identified supports a claim for mental anguish damages, however. The Supreme Court has long required that compensatory damages for emotional distress "be supported by competent evidence concerning the injury." *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978). Failure to establish "actual injury" with sufficient evidence will result in the award of only nominal damages. *Id.* at 266–67. While mental anguish damages do not necessarily need to be supported by expert medical testimony, the plaintiff's testimony must establish a "specific discernable injury to the claimant's emotional state," proven with evidence regarding the "nature and extent" of the harm. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927,

938–40 (5th Cir. 1996); see id. at 940 ("Hurt feelings, anger and frustration are part of life."). Vague and conclusory testimony about a plaintiff's emotional state are insufficient. See Brady v. Fort Bend Cnty., 145 F.3d 691, 718 (5th Cir. 1998) (concluding that "[r]eferences to spending too much time on the couch," "not 'accept[ing the discrimination] mentally," being "highly upset," and "experiencing 'the worst thing that has ever happened to me' hardly qualify as evidence of demonstrable emotional distress[.]").

Here, Plaintiff's testimony fails to identify even a single emotional state, let alone with the kind of specificity that would allow the jury to evaluate the extent or severity of the alleged harm.[13] Plaintiff's statements give the finder of fact no adequate basis from which to gauge the "nature and circumstances of the wrong and its effect on the plaintiff," and fail to create a genuine issue of material fact as to whether he has suffered emotional distress as a result of alleged violation of his constitutional rights. *Carey*, 435 U.S. at 263–64. Accordingly, Plaintiff's claim for mental anguish damages fails as a matter of law.

### B.    Claims against the City of San Antonio

The Supreme Court made clear long ago that a local governmental entity can only be held liable under Section 1983 for constitutional harms that are directly attributable to the governmental entity itself. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Accordingly, a plaintiff suing a municipality under Section 1983 must show that "the municipality has a policy or custom that

---

[13] To the extent that Plaintiff's reference to the impact of his physical injuries on his "daily routine" seeks to invoke Texas standards for mental anguish damages, it is unavailing. ECF No. 89-1, Plaintiff Aff. ¶ 21. While plaintiffs may prove such damages by "establishing a substantial disruption in the plaintiffs' daily routine," the disruption must be attributable to the "nature, duration or severity of anguish." *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

caused plaintiff's injury." *Crull v. City of New Braunfels*, 267 F. App'x 338, 342 (5th Cir. 2008) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). "The plaintiff must identify the specific policy or custom, and show that the final policy maker, through its 'deliberate conduct,' was the 'moving force' behind the violation." *Crull*, 267 F. App'x at 342 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

Acts of individual municipal employees do not create liability under Section 1983 unless a policymaker has adopted a policy or custom that resulted in a constitutional violation. *See Pineda v. City of Hous.,* 291 F.3d 325, 328 (5th Cir. 2002). A plaintiff can show a policy arising from written policy statements, ordinances, or regulations. *Piotrowski*, 237 F.3d at 579. Because it is very unlikely that a plaintiff will document proof of unconstitutional policy or disposition, however, the policy or custom may be inferred circumstantially from conduct. *Grandstaff v. Borger*, 767 F.2d 161, 171 (5th Cir. 1985). Thus, a plaintiff can show a policy by a custom, that is, "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* Finally, a "single decision" may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)).

Whatever its form, to yield municipal liability under § 1983, the policy must have been the "moving force" behind the plaintiff's constitutional violation. *Piotrowski*, 237 F.3d at 580 (quoting *Monell*, 436 U.S. at 694). "In other words, a plaintiff must show direct causation, i.e., that there was 'a direct causal link' between the policy and the violation." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009).

The original complaint asserts two claims against the City, alleging that the City:

1.   Maintained a spoken or unspoken policy, practice, or custom to detain and arrest individuals who record police officers performing public duties even if the individual is not committing any criminal actions; and

2.   Inadequately trained its police officers on the established rights of citizens thereby failing to adequately discourage further constitutional violations on part of its police officers.

*See* ECF No. 1 at 11–12. Based on Plaintiff's motion for partial summary judgment, however, it appears that the first claim, which contemplates the violation of citizens' First Amendment right to record the police, is premised on the City's alleged failure to train officers on citizens' First Amendment rights. ECF No. 78 at 20–26.

For the first time in his response to the City's motion for summary judgment, Plaintiff asserts that, by "failing to train, *supervise*, *investigate*, and *discipline* Officer Ramos—even in light of two complaints made arising from the April 28, 2018 incident—the City *ratified* Officer Ramos' conduct. *See* ECF No. 84 at 2 (emphasis added). He also argues for the first time that "[t]he City's policy of classifying Officer Ramos' conduct—pushing, tackling, kneeling, and leg sweeping a handcuffed Bailey—as not force is unconstitutional [and] goes to deliberate indifference[.]" ECF No. 71 at 3; *see* ECF No. 71-1, Ramos Dep. Tr. at 28:24–29:2 ("[P]hysical force is closed fist strikes, kicks.·. . . [T]hose are the two things that really come to mind when we talk about physical force and when we train on physical force."); 29:3–23 (testifying that an "open empty hand control

technique" such as pulling somebody to the ground, is no considered a use of force), 64:17–20

(characterizing use of force as "any type of striking with . . . fists. Any types of slaps to the body.").

By refusing to review certain instances of or complaints about use of force because they do not

fall within this artificially narrow definition of "force," Plaintiff argues that the City has

encouraged police officers to assault law-abiding citizens. ECF No. 71 at 5.

The City accurately notes that these additional theories of liability are not properly before

the Court. ECF No. 87 at 3. It is well settled in the Fifth Circuit that "a claim which is not raised

in the complaint, but rather, is raised only in response to a motion for summary judgment is not

properly before the court." *See Cutera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113

(5th Cir. 2005); *Jackson v. Gautreaux,* 3 F4th 182, 188 (5th Cir. 2021) (holding plaintiffs' claim

that sheriff "failed to adequately train his officers to deal with mentally unstable individuals" was

not properly before the court where the complaint alleged the sheriff "failed to adequately train his

officer to avoid excessive force"). Accordingly, to the extent that Plaintiff's claims are premised

on the theory that the City (1) failed to supervise, investigate, or discipline Ramos's conduct, (2)

ratified his conduct, or (3) maintained a definition of "force" that encouraged unconstitutional uses

of force against citizens, those claims fail as a matter of law.[14] The Court will now turn to

Plaintiff's claim against the City for failure to properly train officers on citizens' right to record

officers.

---

[14] Even if Plaintiff had properly pled these theories of municipal liability in the complaint, they would be
unlikely to survive summary judgment given that Plaintiff's claims against the City rely entirely on a single incident
involving use of force by a single officer. *See Khansari v. City of Houston*, 14 F. Supp. 3d 842, 871 (S.D. Tex. 2014)
("[T]he mere failure to investigate a police officer's conduct that allegedly violated a person's Fourth Amendment
rights cannot amount to ratification[.]")); *Piotrowski*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Brown*, 520 U.S. at
410–11) ("[I]t is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses
that transcends the error made in a single case."); *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986) (noting
that ratification precedent in the Fifth Circuit "does not stand for the broad proposition that if a policymaker defends
his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be
assumed to have resulted from an official policy").

A municipality's decision not to train or supervise its employees about their legal duty to avoid violating citizens' rights may rise to the level of an official policy for purposes of Section 1983. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). When a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *Canton*, 489 U.S. at 388). "Deliberate indifference is more than mere negligence." *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). It is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. When a municipality's policymakers are on actual or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*

Deliberate indifference may be established in two ways. First, deliberate indifference generally requires that the plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003). This proof-by-pattern method is "ordinarily necessary." *Littell*, 894 F.3d at 624 (citing *Brown*, 520 U.S. at 409). Alternatively, deliberate indifference can be shown "in a limited set of cases" by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Id.* at 372.

In sum, for liability to attach to a municipality for failure to train, Plaintiff must provide evidence to support the (1) municipality's training procedures were inadequate, (2) that the

municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations. *See Zarnow v. City of Wichita Falls,* 614 F.3d 161, 170 (5th Cir. 2010).

Plaintiff does not identify any specific omissions in the City's police training programs, but simply asserts that the officers were "clearly unaware" of Plaintiff's constitutional rights, based on Ramos's conduct at the scene and the other officers' failure to intervene. ECF No. 78 at 21–22. This alleged unawareness, according to Plaintiff, "is clear evidence that Defendant City failed to train its officers or supervisors on its citizens' rights to free speech." *Id.* at 22. With respect to causation, Plaintiff argues:

> A factfinder would easily be able to infer, based on [his] sufficiently pled complaint, that a well-trained officer would have simply recognized that Plaintiff was engaging in a constitutionally protected activity and thus would have left him alone. There is realistically no plausible alternate cause for the injuries sustained by Plaintiff except for Defendant City's failure to train its officers.

*Id.* The law specifically prohibits factfinders from making this inference, however. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . [N]either will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training." *Canton*, 489 U.S. at 390–91; *see also Piotrowski*, 237 F.3d at 578 ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability."). Instead, the plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

In addressing the City's deliberate indifference, Plaintiff fails to identify any similar violations of citizens' constitutional rights to record police or to be free from excessive force.

Instead, he suggests that his arrest alone is sufficient to show deliberate indifference because it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train. ECF No. 78 at 23 (citing *Burge v. St. Tammany Parish*, 3369 F.3d 363, 373 (5th Cir. 2003)).

Plaintiff correctly notes that deliberate indifference can be inferred from a single incident when the risk of constitutional violation was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id.* (citing *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). But "[s]uch an inference is possible in only very narrow circumstances: The municipal entity must have 'fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" *Littell*, 894 F.3d at 625 (quoting *Canton*, 489 U.S. at 396 (O'Connor, J., concurring)). In *Canton*, the Supreme Court noted that failing to train officers on the constitutional limitations on the use of deadly force could properly be characterized as deliberate indifference because city policymakers know to a moral certainty that their armed officers will be required to arrest fleeing felons. *Canton*, 489 U.S. at 390 n.10. "Under [such] circumstances there is an obvious need for some form of training." *Connick v. Thompson*, 563 U.S. 51, 64 (2011). Without proof of a pattern of constitutional violations, however, the failure to train generally must be "complete," rather than merely deficient in a particular narrow respect. *Peña v. City of Rio Grande*, 879 F.3d 613, 624 (5th Cir. 2018); *see, e.g.*, *Littell*, 894 F.3d at 625 (the "official municipal policy" on which Plaintiffs attempt to hang *Monell* liability is the school district's alleged policy of providing *no training whatsoever* regarding its employees' legal duties not to conduct unreasonable searches; *Drake v. City of Haltom*, 106 F. App'x 897, 900 (5th Cir. 2004) ("We are unwilling to say, at th[e pleading

stage], that it is not obvious that male jailers who receive no training and who are left virtually unsupervised might abuse female detainees").

The Court does not disagree with Plaintiff that City policymakers know to a moral certainty that SAPD officers will face citizens exercising their right to record police activity and, accordingly, that failing to train officers on the contours of this right would amount to deliberate indifference. Nonetheless, Plaintiff's failure-to-train claim fails because the summary judgment record indicates that SAPD officers did in fact receive training on the Recording of Official Police Acts, on or about February 11, 2013. ECF No. 65-5 The Training Bulletin provides, in relevant part that:

> The right to record police activity is limited only by reasonable time, place, and manner restrictions. An individual who is lawfully present at the location may record police activity unless that individual engages in actions that jeopardize the safety of any person, violates any law or ordinance, or incites others to violate the law.

*Id.* at 2. Plaintiff has failed to identify a single deficiency in this Bulletin, let alone establish a complete failure to train officers on citizens' First Amendment right to record the police. Indeed, although this was Ramos's first interaction with First Amendment "Auditors," Ramos testified that he had received training and briefings that such Auditors were in the downtown area, and that they were engaged in constitutional practices. ECF No. 89-1, Ramos Dep. at 24:9–24, 25:6–23.

Accordingly, the Court concludes that Plaintiff's claims against the City fail as a matter of law, and the City's motion for summary judgment must be **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendant Oscar Ramos's motion for judgment on the pleadings or summary judgment in the alternative (ECF No. 81) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to Plaintiff's claims for interference with his right to

record police under the First Amendment (Count I) and wrongful prosecution under the Fourth Amendment (Count VI) and his claim for mental anguish damages. Plaintiff David Bailey's motion for partial summary judgment as to liability (ECF No. 78) is **DENIED**. His claims for retaliation under the First Amendment (Count II), wrongful arrest and seizure (Counts III and IV) and excessive force (Count V) under the Fourth Amendment will proceed to trial.

Defendant City of San Antonio's motion for summary judgment (ECF No. 65) is **GRANTED**, and all Plaintiff's claims against the City are **DISMISSED WITH PREJUDICE**.

Defendant City of San Antonio's motion in limine (ECF No. 101) is **DISMISSED AS MOOT**.

It is so **ORDERED**.

**SIGNED** February 17, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

f